**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LATINOJUSTICE PRLDEF AND NEW YORK IMMIGRATION COALITION, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO: 1:19-cv-3438 |
| v. | ) ) | |
| | ) | COMPLAINT FOR |
| U.S. DEPARTMENT OF HOMELAND | ) | DECLARATORY AND |
| SECURITY AND U.S. IMMIGRATION | ) | INJUNCTIVE RELIEF |
| AND CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PRELIMINARY STATEMENT

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief, seeking the immediate disclosure and release of agency records requested by Plaintiffs, LatinoJustice PRLDEF ("LJP") and the New York Immigration Coalition ("NYIC") (LJP and NYIC collectively, "Plaintiffs"), from Defendants, U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") (DHS and ICE collectively, "Defendants").

2.  The information sought is of significant value to the public. Plaintiffs seek information to better understand the creation, operation, and scope of Victims of Immigration Crime Engagement ("VOICE") office, and to ensure that the implementation of the office safeguards civil rights and liberties.

3.   During his 2016 presidential campaign, Mr. Donald Trump promised to enact and enforce strict immigration laws once elected, focusing on building a wall along the Southern border and ramping up the deportation of anyone he and his administration deem removable.

4.   On April 26, 2017, pursuant to Executive Order No. 13768 entitled *Enhancing Public Safety in the Interior of the United States*, then DHS Secretary John F. Kelly launched the ICE VOICE office. According to the DHS, the key objectives of VOICE are "to acknowledge and support immigration crime victims and their families, promote awareness of rights and services available to immigration crime victims . . . and provide quarterly reports studying the effects of the victimization by criminal aliens present in the United States."

5.   VOICE carries out its key objectives primarily through the use of its toll-free hotline. Through this hotline, individuals seeking assistance from VOICE are able to obtain access to local ICE representatives, social service professionals, automated custody status information for alleged perpetrators, and further criminal or immigration history for alleged perpetrators.

6.   The VOICE hotline, and the alleged commission of crimes by immigrants more broadly, has been used as a rallying point for the current U.S. President, and has been the subject of intense public debate, calling into question the public's perception of the government's integrity.

7.   Therefore, Plaintiffs submitted a FOIA request to Defendants requesting disclosure and access to records pertaining to the policies, procedures, and objectives of VOICE, as well as its financial records, as expediently as practicable.

8.   Defendants' failure to turn over requested records violates the FOIA, and is impeding Plaintiffs' efforts to i) educate the public regarding VOICE, and ii) to ensure VOICE's compliance with civil rights and liberties.  There is no comparable source of information or analysis of VOICE. On information and belief, the requested information would increase the public's understanding

about the objectives of VOICE and its compliance with civil rights and liberties. The requested information has a strong potential to significantly contribute to the public's understanding of government operations and activities.

9. Plaintiffs seek (i) declaration that Defendants failed to timely respond and produce agency records in response to Plaintiffs' request in violation of the FOIA, 5 U.S.C. § 552(a), and (ii) the immediate and full compliance of Defendants with their statutory obligations under the FOIA, i.e., the production of the requested records to Plaintiffs.

JURISDICTION AND VENUE

10. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5. U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706 and 28 U.S.C. § 1331.

11. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

12. Venue lies in this district under 5. U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) in that Plaintiffs have offices in New York, NY.

PARTIES

13. Plaintiff LJP is a national non-profit and non-partisan civil rights legal defense and education fund, with 501(c)(3) tax-exempt status, that works to protect and promote the civil rights of Latinos in the United States. LJP's work involves a large spectrum of advocacy and litigation affecting the civil and constitutional rights of the greater pan-Latino community, including criminal justice reform, access to education, housing, employment, immigrants' rights, and voting rights. It has its principal place of business in New York, NY.

14. Plaintiff NYIC is an umbrella policy and advocacy organization for more than 200 groups in New York State, representing the collective interests of New York's diverse immigrant communities and organizations. It has its principal place of business in New York, NY.

15. Defendant DHS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for enforcing federal immigration laws and has jurisdiction over ICE. DHS has possession and/or control over the records sought by Plaintiffs. DHS is headquartered in Washington, D.C.

16. Defendant ICE is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1). ICE enforces federal law governing border control, customs, and immigration to the United States and is under the jurisdiction of DHS. ICE has possession and/or control over the records sought by Plaintiffs. ICE is headquartered in Washington, D.C.

## ALLEGATIONS

**Donald Trump's 2016 Presidential Campaign**

17. On June 16, 2015, Donald Trump announced his candidacy for U.S. president. During that announcement, Mr. Trump publicly denounced immigrants from Mexico: "They're bringing drugs. They're bringing crime. They're rapists."[1]

18. Since his campaign announcement, Mr. Trump has doubled-down on that statement, bringing national attention to families who have been victims of crimes committed by undocumented immigrants as a way of supporting his proposition that undocumented immigrants commit violent crimes at unprecedented rates – despite statistical proof that overall violent crimes

---

[1] Michelle Ye Hee Lee, *Donald Trump's False Comments Connecting Mexican Immigrants and Crime*, Wash. Post, Jul. 8, 2015, *available at* https://www.washingtonpost.com/news/fact-checker/wp/2015/07/08/donald-trumps-false-comments-connecting-mexican-immigrants-and-crime/?utm_term=.e79a54a5c2e6.

have decreased by more than 50 percent while the immigrant population has more than doubled since 1980.[2]

19. Known colloquially as the "angel families," Mr. Trump has brought several of these families with him on the campaign trail, and he has broadcast their stories onstage at the Republican National Convention in July 2016 and during a televised town hall on Sean Hannity's Fox News show in August 2016.[3]

20. Further, during his rally in Phoenix in August 2016, at which he unveiled his immigration platform, Mr. Trump promised to have "[z]ero tolerance for criminal aliens. Zero. They don't come in here . . . We will begin moving them out day one. As soon as I take office. Day one. In joint operation with local, state, and federal law enforcement . . . The crime will stop. They're going to be gone. It will be over," he exclaimed, promising to revoke President Obama's "deadly" policies that "allow thousands of criminal aliens to freely roam our streets, walk around, do whatever they want to do, crime all over the place."[4]

**Executive Order No. 13768 and the Creation of VOICE**

21. On January 25, 2017, five days after his inauguration, Mr. Trump followed through on his campaign promises and unveiled Executive Order No. 13768 entitled *Enhancing Public Safety in the Interior of the United States*, among two additional immigration-focused executive orders.[5] The order mandated that the DHS Secretary, along with the Director of ICE, "take all appropriate and lawful action to establish with [ICE] an office to provide proactive, timely, adequate, and

---

[2] Anna Flagg, *The Myth of the Criminal Immigrant*, NY Times, Mar. 30, 2018, *available at* https://www.nytimes.com/interactive/2018/03/30/upshot/crime-immigration-myth.html.
[3] Kenneth P. Vogel and Katie Rogers, *For Trump and 'Angel Families,' a Mutually Beneficial Bond,* NY Times, Jul. 4, 2018, *available at* https://www.nytimes.com/2018/07/04/us/politics/trump-angel-families-bond-backlash.html.
[4] *Transcript of Donald Trump's Immigration Speech,* NY Times, Sept. 1, 2016, *available at* https://www.nytimes.com/2016/09/02/us/politics/transcript-trump-immigration-speech.html.
[5] The White House, Executive Orders: Enhancing Public Safety In the Interior of the United States, Jan. 25, 2017, *available at* https://www.whitehouse.gov/presidential-actions/executive-order-enhancing-public-safety-interior-united-states/.

professional services to victims of crimes committed by removable aliens and the family members of such victims."[6]

22. On April 26, 2017, pursuant to Executive Order No. 13768, DHS Secretary John F. Kelly launched the ICE Victims of Immigration Crime Engagement ("VOICE") office.[7]

23. According to the DHS, the key objectives of VOICE are:

    i.   Use a victim-centered approach to acknowledge and support immigration crime victims and their families.
    ii.   Promote awareness of rights and services available to immigration crime victims.
    iii.   Build collaborative partnerships with community stakeholders assisting immigration crime victims.
    iv.   Provide quarterly reports studying the effects of the victimization by criminal aliens present in the United States.

*Id*.

24. VOICE carries out its key objectives primarily through the use of its toll-free hotline. Through this hotline, individuals seeking assistance from VOICE are able to obtain access to local ICE representatives, social service professionals, automated custody status information for alleged perpetrators, and further criminal or immigration history for alleged perpetrators. *Id.*

25. However, an overwhelming number of calls received by the VOICE hotline have been unrelated to the function it sought to serve. For instance, callers throughout the country used the hotline to report space aliens, make reservations at a Trump hotel, etc., while others have used the hotline to take revenge against ex-partners and business rivals.[8]

---

[6] *Id.*
[7] U.S. Immigration and Customs Enforcement, Victims of Immigration Crime Engagement (VOICE) Office, last visited Jul. 17, 2018, https://www.ice.gov/voice.
[8] Vera Bergengruen, *Trump Created An Office To Highlight Immigrant Crime. A Year Later, The Results Are Underwhelming,* Buzzfeed, Jul. 1, 2018, *available at* https://www.buzzfeed.com/verabergengruen/trump-immigrant-crime-calls-voice-john-kelly?utm_term=.tky3z37VN#.cva0903Ld.

**Mr. Trump's Re-Election Campaign**

26. Since unveiling his January 2017 immigration-focused executive orders, Mr. Trump has remained steadfast in pursuing the deportation of undocumented immigrants, legal permanent residents, and U.S. citizens whose citizenship he has threatened to revoke.[9]

27. Specifically, Mr. Trump and his administration have prioritized publicizing the false narrative that immigrants are criminals – despite widespread evidence to the contrary.[10]

28. For instance, on February 28, 2017, Mr. Trump invited three "angel family" wives to accompany him during his first joint address to Congress, during which time he described the soon-to-be-launched VOICE office as a direct measure that will provide justice for his three guests and their families.[11]

29. More recently, on February 9, 2018, as part of the Trump Administration's ongoing reporting on "immigrant crime," the Director of Surrogate & Coalitions Outreach for the Office of Communications at the White House circulated an email to reporters entitled "Immigration Crime Stories Round Up: Week of February 4th." The email – just one of 50+ similar blasts from the White House – included nine stories from various news articles in which immigrants had reportedly been accused of committing crimes in the US.[12]

---

[9] Ailsa Chang, *White House Launches Effort To Take Citizenship From Those Who Lied To Get It,* NPR, Jul. 4, 2018, *available at* https://www.npr.org/2018/07/04/625980910/white-house-launches-effort-to-take-citizenship-from-those-who-lied-to-get-it.

[10] Phillip Bump, *The White House's Weekly 'Immigrant Crime' Tally Includes Non-Crimes and Nonimmigrants,* Wash. Post, Feb. 9, 2018, *available at* https://www.washingtonpost.com/news/politics/wp/2018/02/09/the-white-houses-weekly-immigrant-crime-tally-includes-non-crimes-and-non immigrants/?noredirect=on&utm_term=.1a57b950fd1f.

[11] Tal Kopan, *What is VOICE? Trump Highlights Crimes by Undocumented Immigrants,* CNN, Mar. 1, 2017, *available at* https://www.cnn.com/2017/02/28/politics/donald-trump-voice-victim-reporting/index.html.

[12] Phillip Bump, *The White House's Weekly 'Immigrant Crime' Tally Includes Non-Crimes and Nonimmigrants,* Wash. Post, Feb. 9, 2018, *available at* https://www.washingtonpost.com/news/politics/wp/2018/02/09/the-white-

30. On May 16, 2018, Mr. Trump hosted a number of mayors and sheriffs for the California Sanctuary State Roundtable, during which time he expressed on the record: "You wouldn't believe how bad these people are. These aren't people. These are animals. And we're taking them out of the country at a level and at a rate that's never happened before."[13]

31. On June 22, 2018, amidst backlash for his administration's ongoing family separation practices, Mr. Trump again hosted the angel families during a news conference held at the White House. During the conference, one of the mothers, Mary Ann Mendoza, discussed the nonprofit organization that she and others started last May called "Advocates for Victims of Illegal Alien Crime" ("Aviac"). According to Mendoza, Aviac has "close connections" with VOICE, has recently received an increase in donations, and is forming a "political arm . . . that allows it to spend money to try to influence elections, without disclosing its donors."[14]

32. Another family member at the news conference called attention to the Remembrance Project, a nonprofit like Aviac that advocates on behalf of "families hurt by crimes perpetrated by undocumented immigrants." Like Aviac, the Remembrance Project works closely with VOICE, has received an increase in donations, including the tens of thousands of dollars raised by Mr. Trump during his 2016 presidential campaign, and has opened a new office called the Remembrance Project Advocacy Incorporated in order to spend money in elections and lobby government officials.[15]

---

houses-weekly-immigrant-crime-tally-includes-non-crimes-and-non immigrants/?noredirect=on&utm_term=.1a57b950fd1f.

[13] The White House, Remarks: Remarks by President Trump at a California Sanctuary State Roundtable, May 16, 2018, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-california-sanctuary-state-roundtable/.

[14] Kenneth P. Vogel and Katie Rogers, *For Trump and 'Angel Families,' a Mutually Beneficial Bond,* NY Times, Jul. 4, 2018, *available at* https://www.nytimes.com/2018/07/04/us/politics/trump-angel-families-bond-backlash.html.

[15] *Id.*

33. All of this – the creation of a new office within an executive agency, the political rallies, news conferences, emails, campaign spending and lobbying – has garnered significant attention from experts. From the Cato Institute to the journal *Criminology*, social scientists have found that, "[u]ndocumented immigrants are considerably less likely to commit crime than native-born citizens, with immigrants legally in the United States even less likely to do so."[16]

**FOIA Statutory Framework**

34. FOIA promotes open government by providing every person with a right to request and receive federal agency records.  5 U.S.C. § 552(a)(3)(A).

35. In furtherance of its purpose to encourage open government, FOIA imposes strict deadlines on agencies to provide responsive documents to FOIA requests. *Id.,* at § 552(a)(6)(A).

36. An agency must comply with a FOIA request by issuing a determination within 20 business days after receipt of the request. *Id.*, at § 552(a)(6)(A)(i).

37. An agency may be entitled to a one ten-day extension of time to respond to a request if it provides written notice to the requester explaining that "unusual circumstances" exist that warrant additional time. *Id.,* at § 552(a)(6)(B).

38. An agency must immediately notify the requester of its determination whether to comply with a request, and the reasons for it, and of the right of such person to appeal an adverse determination. *Id*., at § 552(a)(6)(A)(i).

39. Further, an agency shall make available a FOIA public liaison to aid the requester in limiting the scope of the request so that it may be processed within the statutory time limit. *Id.,* at § 552(a)(6)(B)(ii).

---

[16] Christopher Ingraham, *Two Charts Demolish The Notion That Immigrants Here Illegally Commit More Crime,* Wash. Post, Jun. 19, 2018, *available at* https://www.washingtonpost.com/news/wonk/wp/2018/06/19/two-charts-demolish-the-notion-that-immigrants-here-illegally-commit-more-crime/?utm_term=.e027c2bbe822; https://www.npr.org/2018/06/22/622540331/fact-check-trump-illegal-immigration-and-crime.

40. An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies. *Id.,* at § 552(a)(6)(C)(i).

41. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. *Id.,* at § 552(a)(4)(B).

**Plaintiffs' FOIA Request to DHS-ICE**

42. On November 28, 2017, Plaintiffs submitted a FOIA request to Defendants seeking records pertaining to the policies, procedures, and objectives of VOICE, as well as its financial records, in order to better understand the creation, operation, and scope of VOICE, and to ensure that the public is properly informed about Defendants' new office. A copy of the FOIA request is attached hereto as Exhibit 1. *See also,* Declaration of Jose Luis Perez in Support of Plaintiffs' Complaint for Declaratory and Injunctive Relief (hereinafter "Perez Declaration"), attached hereto as Exhibit 2, at ¶.

43. In submitting the request, Plaintiffs sought expedited processing under 5 U.S.C. § 552(a)(6)(E) due to the compelling need to inform the public about VOICE and its toll-free hotline, both of which have been a "matter of widespread and exceptional media interest." 6 C.F.R. § 5.5(e)(3); *See also,* Perez Declaration, at ¶ 3.

44. Plaintiffs, as non-profits engaged in litigation, advocacy, and educational programs, which includes the dissemination of information of public interest to Latinos and the public-at-large through community educational forums conducted in both English and Spanish, also sought a fee waiver due to the likelihood that the records sought would "contribute significantly to public

understanding of the operations or activities of the government and [are] not primarily in the [plaintiff's] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii); *See also,* Perez Declaration, at ¶ 4.

45. By electronic mail dated December 12, 2017, Defendants acknowledged receipt of Plaintiff's November 28, 2017 FOIA request and invoked the maximum 10-day extension to respond pursuant to 5 U.S.C. § 552(a)(6)(B).  A copy of the Email confirming receipt is attached hereto as Exhibit 3.  *See also,* Perez Declaration, at ¶ 5.

46. On February 22, 2018, having received no further correspondence from Defendants and no response to the November 28, 2018 FOIA request for 86 days, Plaintiffs submitted a FOIA appeal letter on the grounds of a statutory deadline violation. 5 U.S.C. § 552(a)(6)(A)(i); *See also,* Perez Declaration, at ¶ 6.

47. On June 7, 2018, having received no further correspondence from Defendants, no response to the November 28, 2018 FOIA request for 191 days, and no response to the February 22, 2018 FOIA appeal letter for 104 days, Plaintiffs submitted a second FOIA appeal letter on the grounds of a statutory deadline violation, deeming Defendants' non-responsiveness as a constructive denial of Plaintiffs' request. 5 U.S.C. § 552(a)(6)(A)(i); *See also,* Perez Declaration*,* at ¶ 7.

48. By letter dated June 27, 2018, Defendants responded to Plaintiffs' July 7, 2018 FOIA appeal letter.  In Defendants' response letter, the Chief of the Government Information Law Division determined, "this office is remanding your appeal to the ICE FOIA Office so that they may complete the search of these records and provide a direct response to you." *See Id.,* at ¶ 8.

49. As of April 15, 2019, or over nine (9) months since Plaintiffs' June 7, 2018 appeal was remanded to Defendants' FOIA office, Defendants have failed to respond and produce the records requested in Plaintiffs' November 28, 2018 FOIA request.  *See Id.,* at ¶ 9.

50. Based on the above, Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C).

51. DHS and ICE have violated the applicable statutory time limit for the processing of FOIA requests.

52. DHS and ICE have wrongfully failed to release responsive records to Plaintiffs.

53. All conditions precedent to the maintenance of this action have occurred, been performed or otherwise been waived or excused.

CAUSES OF ACTION

**Count I**
**Declaratory Judgment as to Defendants' Violation of the FOIA,**
**5 U.S.C. § 552, for Failure to Produce Requested Records**

54. Plaintiffs repeat and re-allege the allegations in paragraphs 1through 53 above as if fully set forth herein.

55. Plaintiffs properly submitted their November 28, 2017 FOIA request, and they sought records within Defendants' control.

56. Defendants are obligated under 5 U.S.C. § 552(a)(3) to produce records responsive to Plaintiffs' FOIA request.

57. Defendants have neither produced any records in response to Plaintiffs' FOIA request, nor have they asserted any statutory exemptions for withholding the requested records.

58. Plaintiffs have exhausted their administrative remedies under the FOIA.

59. Defendants' failure to produce the requested records violates the FOIA.

60. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiffs and Defendants.

61. Plaintiffs therefore seek a declaratory judgment that Defendants' failure to produce the requested records violates the FOIA, and Plaintiffs are entitled to injunctive relief.

**Count II**
**Declaratory Judgment as to Defendants' Violation of the FOIA, 5 U.S.C. § 552, for Failure to Timely Respond to Plaintiffs' Initial FOIA Request and Plaintiffs' FOIA Appeal**

62. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 above as if fully set forth herein.

63. Plaintiffs properly submitted their November 28, 2017 FOIA request, and they sought records within Defendants' control.

64. Plaintiffs properly submitted their February 22, 2018 FOIA appeal and their July 7, 2018 FOIA appeal, as courtesy to Defendants.

65. Defendants have failed to timely respond to Plaintiffs' November 28, 2017 FOIA request and Plaintiffs' February 22, 2018 FOIA appeal.

66. Defendants were required to respond substantively to Plaintiffs' FOIA request, and no basis exists for Defendants' failure to provide even a substantive response to Plaintiffs' request.

67. Defendants have failed to timely respond to their July 25, 2018 remand of Plaintiffs' July 7, 2018 FOIA appeal.

68. Plaintiffs have exhausted their administrative remedies under the FOIA.

69. Defendants' failure to timely respond to Plaintiffs' FOIA request and Plaintiffs' FOIA appeal violates the FOIA

70. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiffs and Defendants.

71. Plaintiffs therefore seek a declaratory judgment that Defendants' failure to timely respond to Plaintiffs' initial FOIA request and FOIA appeal is a violation of FOIA, and Plaintiffs are entitled to injunctive relief.

**Count III**
**Declaratory Judgment as to Defendants' Violation of the Administrative Procedure Act**
**for Failure to Timely Respond to Request for Agency Records**

72. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 above as if fully set forth herein.

73. Defendants' failure to timely respond to Plaintiffs' FOIA request for agency records constitutes agency action unlawfully withheld and unreasonably delayed in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

74. Defendants' failure to timely respond is arbitrary, capricious, and an abuse of discretion, not in accordance with law and without observance of procedure required by law in violation of the Administrative Procedure Act.

75. Plaintiffs seek a declaratory judgment that Defendants' failure to timely respond the Plaintiffs' FOIA request is in violation of the Administrative Procedure Act.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter final judgment in favor of Plaintiffs and against Defendants:

(1) Declaring and adjudging that Defendants violated the FOIA by failing to respond and produce records in response to Plaintiffs' November 28, 2017 FOIA request;

(2) Declaring that Defendants' failure to timely respond to Plaintiffs' FOIA request for agency records violates the Administrative Procedure Act;

14

(3) Ordering that Defendants are permanently enjoined from withholding non-exempt records responsive to Plaintiffs' FOIA request;

(4) Ordering Defendants to immediately produce and release the records requested in the November 28, 2017 FOIA request at no cost to Plaintiffs;

(5) Retaining jurisdiction of this action to ensure the proper processing of Plaintiffs' November 28, 2017 FOIA request;

(6) Awarding Plaintiffs their reasonable attorney's fees and litigation costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) Granting such other and further relief as the Court may deem just and proper.

Dated: April 18, 2019

Respectfully Submitted,

/s/ Esperanza Segarra

Esperanza Segarra, Esq.

**LatinoJustice PRLDEF**
Jose L. Perez, Esq.
Esperanza Segarra, Esq.
115 Broadway
New York, NY 10006
(212) 219-3360

**New York Immigration Coalition**
Camille J. Mackler, Esq.[17]
131 W. 33rd Street, Suite 610
New York, NY 10001
(212) 627-2227

*Attorneys for Plaintiff*

---

[17] Admission to SDNY pending.