UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/29/21_

LATINOJUSTICE PRLDEF, et al.,

              Plaintiffs,

     -against-

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

              Defendants.

19-CV-3438 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs LatinoJustice PRLDEF (LJP) and New York Immigration Coalition (NYIC) brought this action on April 18, 2019, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, against the U.S. Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE), seeking the release of unredacted agency records related to the creation, operation, and scope of the newly-created Victims of Immigration Crime Engagement (VOICE) office. Now before the Court are the parties' cross-motions for summary judgment, which turn on the narrow issue of whether defendants properly relied on FOIA Exemption 5, which applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency," 5 U.S.C. § 552(b)(5), when they withheld or redacted 28 documents within the scope of plaintiffs' FOIA request pursuant to the deliberative process privilege and/or the attorney-client privilege.

For the reasons set forth below, plaintiffs' motion (Dkt. No. 47) will be granted in part, and defendants' motion (Dkt. No. 41) will be denied in part, to the extent that defendants must promptly produce, without Exemption 5 redactions, the documents bearing Bates numbers 288, 347-355, and 734. In all other respects, both motions will be denied without prejudice to renewal after defendants submit supplemental *Vaughn* materials as directed herein.

## I.   BACKGROUND

### A.   Parties

Plaintiff LJP is a "national non-profit and non-partisan civil rights legal defense and education fund" that advocates on behalf of Latinos in the United States. Compl. (Dkt. No. 1) ¶ 13. Plaintiff NYIC is "an umbrella policy and advocacy organization for more than 200 groups in New York State, representing the collective interests of New York's diverse immigrant communities and organizations." *Id.* ¶ 14.

Defendant DHS is a Department of the Executive Branch of the U.S. Government and is "responsible for enforcing federal immigration laws." Compl. ¶ 15. ICE is a "component of" and "under the jurisdiction of" DHS. *Id.* ¶¶ 15-16. ICE "enforces federal law governing border control, customs, and immigration to the United States." *Id.* ¶ 16. DHS and ICE have "possession and/or control over the records sought by Plaintiffs." *Id.* ¶¶ 15-16.

### B.   Factual Background

On January 25, 2017, then-President Donald J. Trump signed Executive Order (EO) No. 13768 (entitled "Enhancing Public Safety in the Interior of the United States"), which – among other things – mandated that the Secretary of DHS and the Director of ICE "take all appropriate and lawful action to establish . . . an office to provide proactive, timely, adequate, and professional services to victims of crimes committed by removable aliens and the family members of such victims." Compl. ¶ 21. Pursuant to EO 13768, then-DHS Secretary John F. Kelly launched the VOICE office, as a part of ICE, on April 26, 2017. *Id.* ¶ 22. The VOICE office utilizes a toll-free hotline, through which "individuals seeking assistance" can access "local ICE representatives, social service professionals, automated custody status information for alleged perpetrators, and further criminal or immigration history for alleged perpetrators." *Id.* ¶ 24.

On November 28, 2017, plaintiffs submitted the FOIA request at issue in this case. Compl. ¶ 42 & Ex. 1 (FOIA Request). Plaintiffs sought expedited disclosure of: (1) "Any and all records[] received, maintained, and/or in the possession of ICE on the policies, procedures, objectives, or other guidelines related to VOICE, including documents created prior to January 27, 2017"; (2) specific aggregate data (such as the number of phone calls received on the VOICE toll-free hotline), as well as "[a]ny and all budgets and financial records referring or relating to the projected and actual cost of VOICE"; and (3) "departmental or organizational charts, memorandums, concept of operations, authorization memorandums and other documentation which identifies VOICE's Unit and policy decision-makers and executives, and[] VOICE's relationship to other executive branches." FOIA Request at 1-2. On December 12, 2017, ICE acknowledged receipt of the FOIA Request, stating that while its goal was to respond within the 20 business days allowed by 5 U.S.C. § 552(a)(6)(A)(i), it was invoking the 10-day extension permitted by 5 U.S.C. § 552(a)(6)(B). Compl. ¶ 45 & Ex. 3.

On February 22, 2018, having received no further communications from defendants, plaintiffs submitted a "FOIA appeal letter," asserting that defendants violated their statutory deadline for responding within 20 business days (plus the 10-day extension) pursuant to 5 U.S.C. § 552(a)(6)(A)(i). Compl. ¶ 46; *see also* Declaration of Jose Luis Perez in Support of Plaintiffs' Complaint (Perez Decl.) (Dkt. No. 1-2) ¶ 6. On June 7, 2018, having still not heard from defendants, plaintiffs submitted a second FOIA appeal letter. Compl. ¶ 47; *see also* Perez Decl. ¶ 7. On June 27, 2018 (nearly seven months after receiving the original FOIA Request), defendants responded to the second appeal letter, stating: "[T]his office is remanding your appeal to the ICE FOIA Office so that they may complete the search of these records and provide a direct response

to you." Compl. ¶ 48; *see also* Perez Decl. ¶ 8. Ten months later – having heard nothing from defendants in the interim – plaintiffs filed their complaint. Compl. ¶ 49.

### C.  Procedural Background

Plaintiffs seek a declaratory judgment that (1) defendants' failure to produce the requested records and failure to timely respond to plaintiffs' FOIA Request and appeal violated FOIA; and (2) defendants' failure to timely respond to plaintiffs' FOIA Request violated the Administrative Procedure Act. Compl. ¶¶ 61, 71, 75. On June 5, 2019, defendants filed their answer. (Dkt. No. 13.) On August 27, 2019, the parties consented to the jurisdiction of the assigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 21.) On the same day, the Court held an initial case management conference and directed defendants to "produce documents responsive to plaintiff's FOIA request . . . no later than November 1, 2019." (Dkt. No. 22 ¶ 2.)

On February 3, 2020, after producing documents, defendants provided plaintiffs with a draft *Vaughn* index describing the pages that were withheld from the production or produced in redacted form. *See* Joint Ltr. dated April 17, 2020 (Dkt. No. 36) at 1. On April 23, 2020, following a status conference, the Court issued an order (Dkt. No. 37) setting a schedule for the parties' anticipated cross-motions for summary judgment. That schedule was later extended at the parties' request. (Dkt. No. 40.)

On August 13, 2020, defendants filed their motion, together with a memorandum of law (Def. Mem.) (Dkt. No. 42) and the declaration of ICE's Acting FOIA Officer Fernando Pineiro (Pineiro Decl.) (Dkt. No. 43), attaching the government's final *Vaughn* index (Index) (Dkt. No. 43-1). In his declaration, Pineiro attests that ICE produced 1,032 pages of responsive records as well as two excel spreadsheets; that 494 pages, as well as the two spreadsheets, were "released

subject to partial FOIA withholdings"; and that 325 pages were "withheld in full." Pineiro Decl. ¶¶ 9, 10. Pineiro also explains that the parties narrowed their summary judgment dispute to 24 documents (comprising 217 pages) that were "withheld in full or in part pursuant to FOIA Exemption (b)(5)," which defendants applied "to protect from disclosure information subject to the deliberative process privilege and attorney-client privilege." *Id.* ¶¶ 11, 18.

On September 14, 2020, plaintiffs filed their cross-motion for summary judgment, together with a memorandum of law (Pl. Mem.) (Dkt. No. 48), a Rule 56.1 Statement (Pl. 56.1 Stmt.) (Dkt. No. 50),[1] and the declaration of their attorney Natasha Lycia Ora Bannan (Bannan Decl.) (Dkt. No. 49), attaching the disputed pages in the form produced by defendants (that is, either with redactions noting the exemption(s) relied on or replaced entirely by a page reading, "withheld pursuant to exemption (b)(5)"). Bannan Decl. ¶ 3 & Exs. B-X. On October 5, 2020, defendants filed their reply brief in support of their motion and in opposition to plaintiffs' cross-motion (Def. Reply Mem.) (Dkt. No. 53), together with the declaration of their attorney Alexander J. Hogan (Hogan Decl.) (Dkt. No. 52) and their response to plaintiffs' Rule 56.1 Statement (Dkt. No. 51).[2] On October 26, 2020, plaintiffs filed their reply brief (Pl. Reply Mem.) (Dkt. No. 54).

---

[1] In their Rule 56.1 Statement, plaintiffs provide slightly different figures for the number of pages produced, redacted, and withheld. *See* Pl. 56.1 Stmt. ¶¶ 8-9. However, the dispute is immaterial, as the parties agree on the number and identity of the documents that remain in dispute.

[2] In their reply brief, defendants note that while they responded to plaintiffs' 56.1 Statement, "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," such that a separate Local Civil Rule 56.1 statement from the government "would be meaningless." Def. Reply Mem. at 1 n.1 (quoting *Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996)); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (noting that a Local Civil Rule 56.1 statement is not required in FOIA actions in the Second Circuit). Defendants are correct.

## II.    ANALYSIS

### A.    Legal Standards

#### 1.    FOIA

"FOIA was enacted in order to 'promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed.'" *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005) (quoting *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 478 (2d Cir. 1999)). "FOIA strongly favors a policy of disclosure . . . and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act," which must be narrowly construed. *Nat'l Council of La Raza*, 411 F.3d at 355-56 (citations omitted). "The government bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (quoting *Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014)).

FOIA authorizes a complainant from whom agency records have been improperly withheld to bring suit in "the district court of the United States in the district in which the complainant resides, or has his principal place of business . . . ." 5 U.S.C. § 552(a)(4)(B). The district court must then determine the matter *de novo*. *Id.*

#### 2.    Resolving FOIA Claims at Summary Judgment

Summary judgment is the usual mechanism for resolving FOIA disputes. *Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 360 (S.D.N.Y. 2008). "A district court in a FOIA case may grant summary judgment in favor of an agency 'on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called

into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Grand Cent. P'ship*, 166 F.3d at 478 (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)) (emphasis in *Grand Cent. P'ship*). "[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Conversely, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate 'when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'" *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 398 (S.D.N.Y. 2014) (quoting *N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)).

"[T]he general rule in [the Second Circuit] is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." *Ferguson*, 1995 WL 329307, at *2 (citing *Carney*, 19 F.3d at 812). These affidavits generally are "accorded a presumption of good faith." *Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334, 341 (S.D.N.Y. 2020) (quoting *Carney*, 19 F.3d at 812).

When invoking a FOIA exemption, agencies customarily submit what has come to be known as a *Vaughn* index, *see Vaughn v. Rosen,* 484 F.2d 820, 826-28 (D.C. Cir. 1973), along with the affidavit(s). A *Vaughn* index is a "list of withheld documents and claimed exemptions," which also "describ[es] the documents and the agency's rationale for withholding them" without "exposing the withheld information." *Adelante Alabama Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 355 (S.D.N.Y. 2019) (internal quotation marks omitted); *accord Welby v. U.S. Dep't of Health*, 2016 WL 1718263, at *3 n.3 (S.D.N.Y. Apr. 27, 2016). "Although the Second Circuit has 'eschewed rigid adherence to any particular indexing format under the *Vaughn* standard,' . . . the government may wish to identify the Bates numbers of the responsive documents,

the applicable document category from Plaintiffs' FOIA request, as well as a specific explanation for why the document or documents at issue . . . 'logically falls within the claimed exemption.'" *Am. C.L. Union v. Officer of the Director of Nat'l Intelligence*, 2011 WL 5563520, at \*13 (S.D.N.Y. Nov. 15, 2011) (quoting *Halpern v. FBI*, 181 F.3d 279, 291 (S.D.N.Y. 2011) and *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009)). "The titles and descriptions of documents listed in a *Vaughn* index usually facilitate the task of asserting and adjudicating the requester's challenges to the Government's claims of exemption" by "giv[ing] the court and the challenging party a measure of access without exposing the withheld information." *N.Y. Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 439 (2d Cir.), *supplemented*, 762 F.3d 233 (2d Cir. 2014).

In exceptional circumstances, courts may conduct an *in camera* review of the disputed documents in order to evaluate the agency's claimed exemptions. However, the Second Circuit has "adopted a restrained approach" to permitting *in camera* review, only allowing it where "the record showed the reasons for withholding were vague," where "the claims to withhold were too sweeping or suggestive of bad faith," where "it might be possible that the agency had exempted whole documents simply because there was some exempt material in them," *Halpern*, 181 F.3d at 292, or where "information contained in agency [declarations] is contradicted by other evidence in the record." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 360 (quoting *Am. C.L. Union v. F.B.I.*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014)) (conducting *in camera* review of a single, five-page memorandum where there was a conflict between evidence in the record and the language used in the agency declarations, and because there was only a single document "of short length"); *see also Cox v. Dep't of Justice*, 2020 WL 7024288, at \*21 (E.D.N.Y. Nov. 30, 2020) (quoting *Local 3, Int'l Brotherhood of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1998)) ("In adjudicating FOIA actions, '*[i]n camera* review is considered the exception, not the rule, and

the propriety of such review is a matter entrusted to the district court's discretion.'"); *accord Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 360. Conversely, so long as "the affidavit is sufficiently detailed to place the documents within the claimed exemptions," and the "government's assertions are not challenged by contrary evidence or a showing of agency bad faith," the district court should not conduct *in camera* review. *Halpern*, 181 F.3d at 292; *see also Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 630 (S.D.N.Y. 2018) (a "district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions"); *Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 67 (2d Cir. 2008) ("Only if the government's affidavits make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions is *in camera* review necessary."); *Am. C.L. Union*, 435 F. Supp. 3d 539, 560 (S.D.N.Y. 2020) (quoting *Wilner*, 592 F.3d at 76) ("[I]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinion.").

Beyond *in camera* review, a district court has several other options "for eliciting further detail from the government" when "faced with conclusory or otherwise insufficient agency affidavits." *Am. C.L. Union*, 2011 WL 5563520, at *13 (quoting *Halpern*, 181 F.3d at 295). For example, it can order the government to produce "supplemental *Vaughn* affidavits," including more detailed affidavits "for *in camera* review." *Id.* (quoting *Vaughn*, 484 F.2d at 826) (ordering the government to "submit for *in camera* review *Vaughn* indices and, if necessary, supplementary

*Vaughn* affidavits that include 'a relatively detailed analysis [of the withheld material] in manageable segments' without resort to 'conclusory and generalized allegations of exemptions'").

### 3. Exemption 5

FOIA's fifth exemption permits the government to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption "incorporates all normal civil discovery privileges, including the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement*, 811 F. Supp. 2d 713, 735 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) (internal quotation marks omitted).

#### a. *Deliberative Process Privilege*

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)). The rationale is that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and therefore, the privilege "enhance[s] the quality of agency decisions, by protecting open and frank discussion among those who make them within the government." *Tigue*, 312 F.3d at 76 (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). In order to fall within this privilege, the inter-agency or intra-agency document must be: (1) predecisional, and (2) deliberative. *Id.* at 76-77.

A document is "predecisional" when "it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'ship*, 166 F.3d at 482); *see also Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 735 (explaining that

the government "must be able to demonstrate that . . . the document for which . . . privilege is claimed related to a specific decision facing the agency"). In making the determination, courts consider whether the government can: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 357 (quoting *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)). Such documents often include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* A document is *not* predecisional when it is "merely peripheral to actual policy formation." *Id.* at 356. "[T]he record must bear on the formulation or exercise of policy-oriented judgment." *Id.* (quoting *Tigue*, 312 F.3d at 80).

A document is "deliberative" if it is "actually . . . related to the process by which policies are formulated," *Nat'l Council of La Raza*, 411 F.3d at 356 (quoting *Cuomo*, 166 F.3d at 482), but not if it is merely part of a public official's "routine operating decisions." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 357. In evaluating whether a document is deliberative, courts consider several factors, including "whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Nat'l Day Laborer*, 811 F. Supp. 2d at 736.

"It is well-settled that draft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or

rejected upon further deliberation by their authors or by their superiors." *Color of Change v. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) (internal quotation and citation omitted). However, the mere fact that a document is labeled "draft" is not dispositive of the issue. A draft may be protected by the deliberative process privilege only if it "reflects the personal opinions of the writer rather than the policy of the agency" and "contains discussions that reflect the policy-making process." *Nat'l Day Laborer*, 811 F. Supp. 2d at 741 (quoting *Tigue*, 312 F.3d at 80); *see also N.Y. Times Co.*, 499 F. Supp. 2d at 515 (quoting *Lee v. FDIC*, 923 F. Supp. 451, 458 (S.D.N.Y. 1996)) ("The mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure.").

Even as to documents otherwise entitled to protection under the deliberative process privilege, the privilege does not apply when: (1) "the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public"; or (2) "the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 357 (quoting *Brennan Ctr. for Justice at N.Y.U. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012)). Further, the privilege does not protect "purely factual" material which does not reflect the agency's deliberative process. *See Grand Cent. P'ship*, 166 F.3d at 482. Finally, "[v]oluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 357 (quoting *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 114 (2d Cir. 2014)).

### b. Attorney-Client Privilege

In addition to the deliberative process privilege, the attorney-client privilege may apply to protect documents from disclosure under Exemption 5. As in the non-FOIA context, the attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are

intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan Ctr.*, 697 F.3d at 207 (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)). "[T]he attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Id.* (quoting *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)). The attorney-client privilege is particularly important in the governmental context, because "[i]t is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice." *Nat'l Day Laborer*, 811 F. Supp. 2d at 743 (quoting *In re County of Erie*, 473 F.3d at 419). Just as with the deliberative process privilege, "the attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." *Brennan Ctr.*, 697 F.3d at 207 (quoting *Nat'l Council of La Raza*, 411 F.3d at 360).

FOIA further requires that "[a]ny reasonably segregable portion of a record" be produced "after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Therefore, it is the Court's obligation to "ensure no reasonably segregable portions of the documents can be produced." *Color of Change*, 325 F. Supp. 3d at 455.

## B.  Application

Plaintiffs challenge the withholding or redaction (pursuant to Exemption 5) of 28 documents, bearing the following Bates numbers: 1-7, 90-99, 106-112, 155-157, 170-179, 183-192, 195-197, 201-216, 252-263, 264-268, 288, 319-324, 347-355, 386-390, 405-416, 455-467, 511-523, 528-540, 582-595, 599-608, 643-654, 679-690, 731-734, and 800-809. *See* Pl. 56.1 Stmt. ¶ 16; *see also* Bannan Decl. Ex. A-X. Defendants delineate the documents at issue into nine categories, as outlined in the subsections below.

Plaintiffs argue principally that defendants failed to include in their *Vaughn* index or related materials the "information necessary to substantiate their assertion that the withheld material falls within FOIA Exemption 5." Pl. Mem. at 2. Instead, according to plaintiffs, defendants employed "boilerplate" and "conclusory" language in asserting the applicability of the deliberative process privilege (and, as to one category, the attorney-client privilege), even though courts routinely find such language inadequate in this context. *Id.* at 2, 5 (citing *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) and *Cause of Action v. FTC*, 961 F. Supp. 2d 142, 153 (D.D.C. 2013)). Plaintiffs further suggest that some of the contested documents may constitute "working law" in whole or in part, which cannot be withheld, or may include segregable facts that should have been disclosed. *See* Pl. Mem. at 6-19.

For the reasons that follow, the Court agrees with plaintiffs to this extent: As to two categories of documents, defendants improperly withheld material that should have been disclosed. As to the remaining categories, defendants did not provide information sufficient for the Court to properly evaluate the claim of exemption. As to these categories, defendants will be given an opportunity to prepare a more detailed *Vaughn* index, after which the parties may renew their motions if necessary.

### 1.      Legal Analysis of Implications of Creating the VOICE Office

The first category consists of a single document, appearing several times in defendants' production with the following Bates numbers: 1-7, 106-112, 170-179, 183-192, and 207-216. *See* Def. Mem. at 8; Index at 2; Bannan Decl. Exs. A, C, E, F, H.[3] In their brief, defendants describe

---

[3] In their brief, defendants clarify that "[s]ome of the documents contain the entirety of this memorandum, while others only contain portions, thus explaining why the same document has a different number of pages at various points in the production." Def. Mem. at 8 n.4.

the document as a "Legal Analysis of Implications of Creating the VOICE Office." Def. Mem. at

8. In their *Vaughn* index, defendants state:

> These records consist of draft memoranda addressing an issue on the funding and structure of the VOICE office from a fiscal law perspective. The records were drafted to evaluate options on how the agency plans to implement the VOICE office and reflect a back and forth discussion on how to implement agency policy, including discussions of legal obligations.

Index at 2. The withheld memorandum contains "draft watermarks, tracked changes, and comment

bubbles," indicating its draft status. *Id.* A portion of the memorandum also includes "legal advice

provided from the Office of the Principal Legal Advisor for General and Administrative Law to

the Office of Management and Administration and the Office of Public Affairs . . . regarding the

VOICE Office, specifically as relating to fiscal law issues." *Id.*[4] Defendants have redacted this

document, in all of its iterations, in full (that is, they have withheld it entirely) under FOIA

Exemption 5, invoking both the deliberative process privilege and the attorney-client privilege.

 As to the attorney-client privilege, the Court concludes that defendants have adequately

described communications between attorney and client "for the purpose of obtaining or providing

legal assistance," (specifically, "legal advice provided from the Office of the Principal Legal

Advisor for General and Administrative Law to the Office of Management and Administration and

the Office of Public Affairs"). Defendants also have asserted that the communications were

"confidential." Pineiro Decl. ¶ 22. Therefore, defendants have met their burden as to the portion

of this document withheld on the basis of the attorney-client privilege.

 As to the deliberative process privilege, however, the Court agrees with plaintiffs that

defendants' *Vaughn* materials are not "sufficiently detailed to place the document[] within the

---

[4] According to the ICE website, the Office of the Principal Legal Advisor "provides a full range of legal services to ICE programs and offices." ICE, "Office of the Principal Legal Advisor," https://www.ice.gov/about-ice/opla (last visited April 29, 2021).

claimed exemption[ ]." *Halpern*, 181 F.3d at 292. As plaintiffs point out, *see* Pl. Reply Mem. at 4, the document is withheld in its entirety – only blank pages were produced – leaving no clues as to when it was prepared, by whom, or for whom. Nor does the *Vaughn* index provide any "indication of authors, dates, times, [or] recipients." *Id*. To the contrary: although defendants state that the contents of the document are "pre-decisional," Index at 2, the reader is left in the dark as to what decision(s) it preceded. For example, it is unclear whether the memorandum was prepared prior to (and thus assisted the White House in formulating) EO 13768, or whether it post-dated the Executive Order and was prepared for the purpose of assisting one or more officials within the agency with the details of organizing the newly-authorized VOICE office. Because the government – which "bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold," *Florez*, 829 F.3d at 182 – has failed to provide a date for the document or "pinpoint the specific agency decision to which the document correlates," *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 357 (quoting *Perez*, 194 F.R.D. at 92), it has also failed to "establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision." *Id.* Similarly, defendants have provided insufficient particularized information to allow the Court to determine whether the document "formed an essential link in a specified consultative process," reflected the "personal opinions of the writer rather than the policy of the agency," or – if released – would "inaccurately reflect or prematurely disclose the views of the agency." *Nat'l Day Laborer*, 811 F. Supp. 2d at 736.[5]

---

[5] Defendants' boilerplate statement (used repeatedly in the Index) that the withheld document was "drafted to evaluate options on how the agency plans to implement the VOICE office and reflect a back and forth discussion on how to implement agency policy" is too vague to shore up an otherwise insufficient *Vaughn* index.

Because defendants have not met their burden of establishing that the document described in the first category, in any of its iterations, was properly withheld pursuant to Exemption 5, defendants' motion will be denied as to this category. Because defendants may well be able to cure these deficiencies, however, the denial is without prejudice to renewal if they first provide a supplemental *Vaughn* index which includes "a relatively detailed analysis" of the withheld material, that addresses the issues outlined above "without resort to conclusory and generalized allegations of exemptions." *Am. C.L. Union*, 2011 WL 5563520, at *13 (internal quotations omitted); *see also Seife*, 298 F. Supp. 3d at 630-31 (denying State Department's summary judgment motion in part, without prejudice, and directing it to submit revised *Vaughn* materials); *Cox,* 2020 WL 7024288, at *28 (denying FBI's motion for summary judgment without prejudice and directing agency to "supplement its Vaughn submissions in accordance with this Order").

### 2.    VOICE Office Rollout Plan

The second category – referred to as a draft "VOICE Office Rollout Plan" – also consists of a single document which appears several times in the production with the following Bates numbers: 90-99, 405-416, 455-467, 511-523, 528-540, 582-595, 599-608, 643-654, 679-690, and 800-809. Def. Mem. at 9; Index at 3; Bannan Decl. Exs. B, O, Q, R, S, T, U, V, and X. This document is entitled "External Affairs Rollout Plan: Victims of Immigration Enforcement Office (VOICE)" and consists of a "summary, draft schedule, draft news release, draft talking points, and draft FAQ." Index at 3. According to defendants, the Rollout Plan was "drafted to evaluate options on how the agency plans to implement the VOICE office" and "represent[s] the considerations taken by the agency during the planning and launching stages of the VOICE office." *Id.* The Rollout Plan contains "draft watermarks, and 'Predecisional/Draft' markings," *id.*, and is dated March 23, 2017, approximately two months after the issuance of EO 13768. Bannan Decl. Ex. X,

at ECF page 2. With the exception of a portion of its cover page (showing the title and the date), this document was withheld in full, in all of its iterations, pursuant to FOIA Exemption 5, on the basis of the deliberative process privilege. Defendants do not, however, make any claim of attorney-client privilege as to this memorandum.

As with the first category, the Court agrees with plaintiffs that defendants' *Vaughn* materials provide insufficient detail for the Court to determine whether the document was properly withheld pursuant to the deliberative process privilege. It is not at all clear that materials such as schedules and FAQs, even in draft, "bear on the formulation or execution of policy-oriented judgment." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 356. Moreover, the vague assertion that the draft "represent[s] the considerations taken by the agency during the planning and launching stages of the VOICE office" does not serve to "pinpoint the specific agency decision[s] to which the document correlates." *Id.* at 357. Further, as discussed above, the boilerplate statement that the withheld document was "drafted to evaluate options on how the agency plans to implement the VOICE office and reflect a back and forth discussion on how to implement agency policy" adds little of value.

For these reasons, and on the current record, defendants have not met their burden of establishing that the document described in the second category, in any of its iterations, was properly withheld pursuant to Exemption 5. Defendants' motion will be denied as to this category without prejudice to renewal after the service of supplemental *Vaughn* materials providing "a relatively detailed analysis" of the withheld material, *Am. C.L. Union*, 2011 WL 5563520, at *13, which identifies the decisions to which the document correlates and the "policy-oriented judgment" involved in drafting schedules or FAQs in this context.

### 3. Memorandum Relating to VOICE Office Intake Assistance

The third category of documents – referred to as "Memorandum Relating to VOICE Office Intake Assistance" – is also a single document which appears several times in the production with the following Bates numbers: 155-157, 195-197, 201-206, and 319-324. Def. Mem. at 11; Index at 4; Bannan Decl. Exs. D, G, H, L. The document is a draft memorandum "addressing the use of existing intake and assistance points for the VOICE office in order to interact with the public and other stakeholders." Index at 4. No further detail concerning the subject-matter or contents of the memorandum is provided. According to defendants, this document – like those described in the first and second categories – was "drafted to evaluate options on how the agency plans to implement the VOICE office and reflect[s] a back and forth discussion on how to implement agency policy." *Id.* The document includes "draft watermarks, tracked changes, and comment bubbles." *Id*. No date or date range is provided for the memorandum described in the third category. Defendants have withheld the document in full under FOIA Exemption 5, pursuant to the deliberative process privilege. No claim of attorney-client privilege is made.

For the same reasons described above – in discussing the first and second categories – the information provided in defendants' *Vaughn* materials is insufficient for the Court to determine whether the memorandum at issue in the third category is predecisional – that is, whether it precedes any "specific agency decision to which the document correlates," *Adelante Alabama Worker Ctr.*, 376 F. Supp. at 357, and deliberative. For these reasons, and on the current record, defendants have not met their burden of establishing that the document described in the third category, in any of its iterations, was properly withheld pursuant to Exemption 5. Defendants' motion will be denied as to this document, without prejudice to renewal after the service of supplemental *Vaughn* materials.

#### 4.    Memorandum Relating to ICE Policies and Regulations

The fourth category described in defendants' brief comprises a single draft document which appears only once in the production – bearing Bates numbers 264-268 – and consists of an untitled memo "on an issue regarding a review of internal policies." Index at 7; *see also* Bannan Decl. Ex. J; Def. Mem. at 12. Specifically, the memorandum contains a "preliminary list" of "policies that are being considered for rescission or modification." Index at 7. It was "drafted to evaluate options on a draft response to specific items raised in the Executive Order Task Force Meeting and reflect[s] a back and forth discussion on how the agency is to implement its policies." *Id.* No date is provided either for the memorandum itself or for the Task Force Meeting out of which it arose.[6] The memorandum contains "draft watermarks" and "Law Enforcement Sensitive" markings. *Id.* Defendants have withheld the document in full under FOIA Exemption 5, pursuant to the deliberative process privilege. Although defendants state that the document is a "deliberative draft document from ICE employees and attorneys related to the agency's actions with regard to a review of its internal policies," Index at 7, no claim of attorney-client privilege is made.

In this instance, the information provided in defendants' *brief* adequately describes the content of the document, and does so in a manner that allows the Court to recognize that content as deliberative. However, that information does not appear in the Index or any affidavit. Moreover, the Court is unable to determine whether the withheld memorandum, for which no date information

---

[6] Defendants' brief describes the withheld memorandum somewhat differently, and in more detail: "Specifically, this document is a review of 'internal policy directives, memoranda, handbooks, standard operating procedures, and other guidance documents that may need to be rescinded or modified to comply with the provisions of the EOs [Executive Orders].' The document then proceeds to go through many such items that may need to be modified." Def. Mem. at 12 (internal quotation marks and brackets as in the original). This language does not appear in the Index or any affidavit. It is not clear whether the internal quotation is taken from the withheld document itself or from some other source which is not before the Court.

is provided, precedes any "specific agency decision to which the document correlates." *Adelante Alabama Worker Ctr.*, 376 F. Supp. at 357.[7]

For these reasons, and on the current record, defendants have not met their burden of establishing that the document described in the fourth category was properly withheld pursuant to Exemption 5. Defendants' motion will be denied as to this document, without prejudice to renewal after the service of supplemental *Vaughn* materials.

### 5. Implementation Plan of VOICE Office

The fifth category comprises a single document, labeled a "VOICE Implementation Plan Memorandum," which also appears only once in the production, bearing Bates numbers 386-390. Index at 9; *see also* Def. Mem. at 13; Bannan Decl. Ex. N. According to defendants, this document addresses "the proposed implementation plan of the VOICE office." Index at 9. The first several pages "consist of a draft schedule for tasks necessary to implement the VOICE office," and the last few pages include "an executive summary that outlines the proposed structure of the VOICE office and the various initiatives that the VOICE office intended to pursue." *Id.* The memorandum contains "draft watermarks." *Id.* No date or date range is provided for the document. Defendants have withheld the document in full under FOIA Exemption 5, pursuant to the deliberative process privilege. No claim of attorney-client privilege is made.

In this instance, the information provided in the Index adequately describes the content of the document in a manner that allows the Court to recognize at least some of that content as deliberative. However – due in part to the absence of any indication as to *when* the document was

---

[7] Defendants' brief – but not their *Vaughn* materials – states that the memorandum "reflects the agency's analysis of the continuing viability of its current policies in light of new directives from the President." Def. Mem. at 12. This language at least suggests that the withheld document post-dates EO 13768, but still does not identify any decision that it precedes and to which it "correlates." *Adelante Alabama Worker Ctr.*, 376 F. Supp. at 357.

prepared – the Court is once again unable to determine whether it preceded any "specific agency decision to which the document correlates." *Adelante Alabama Worker Ctr.*, 376 F. Supp. at 357. Moreover, nothing in the existing *Vaughn* materials explains why a "draft schedule" qualifies for protection under the deliberative process privilege.

For these reasons, and on the current record, defendants have not met their burden of establishing that the document described in the fifth category was properly withheld pursuant to Exemption 5. Defendants' motion will be denied as to this document, without prejudice to renewal after the service of supplemental *Vaughn* materials.

### 6.     VOICE "Fact Sheet"

The sixth category consists of two documents, both relating to what defendants describe as the "VOICE 'Fact Sheet.'" Def. Mem. at 14; *see also* Index at 10-11; Bannan Decl. Ex. W. The first document, bearing Bates numbers 731-732, is a draft "fact sheet" containing "information on the purpose of the VOICE office and the services contemplated to be offered by the VOICE Office to the public." Index at 10. Notwithstanding that the document is a "fact sheet," defendants state that it "does not contain data relating to the VOICE Office, but, rather, the goals, purpose, and services to be offered by the VOICE Office, thus amounting to a draft document created to evaluate options as to how the agency planned to implement the VOICE office." *Id.*

The second document, bearing Bates number 733, is a June 6, 2017 email "between ICE employees regarding the drafting of the language on the VOICE fact sheet and website." *Id.* at 11; *see* Bannan Decl. Ex. W at ECF page 4. According to defendants, the email reveals "deliberations on a draft disclaimer to be added on the fact sheet and website." Index at 11. In the body of the email, the first line of text is: "We were hoping you may be able to add this line to the two fact

sheets and on the website somewhere as an asterisk somewhere appropriate." Bannan Decl. Ex. W at ECF page 4. The remainder of the email – approximately seven lines of text – is redacted.

Defendants rely entirely on the deliberative process privilege to withhold both documents under Exemption 5, making no claim of attorney-client privilege.[8] According to defendants, "[b]y their very nature, draft documents reflect pre-decisional, preliminary versions of agency policy. In fact, the process by which a draft evolves into a final document is itself a deliberative process." Pineiro Decl. ¶ 20. This is an overstatement. Agency drafts are "typically" predecisional and deliberative, *Color of Change*, 325 F. Supp. 3d at 453, but the fact that a document is a draft is not, standing alone, "sufficient reason to automatically exempt it from disclosure." *N.Y. Times Co.*, 499 F. Supp. 2d at 515 (quoting *Lee*, 923 F. Supp. at 458). This is especially so when the document being drafted is intended for the public and is primarily informational rather than prescriptive in nature. In such cases, it may be that the only "deliberations" taking place while the draft "evolves into a final document" are deliberations concerning word choice, layout, or even font size. Because such deliberations do not "reflect the policy-making process," *Nat'l Day Laborer*, 811 F. Supp. 2d at 741, they are not protected by the deliberative process privilege.

The Court cannot determine, based on the information provided in defendants' *Vaughn* materials, whether the draft VOICE Fact Sheet and the email discussing language for the "disclaimer to be added on the fact sheet and website" are "actually . . . related to the process by which policies are formulated," *Nat'l Council of La Raza*, 411 F.3d at 356, or merely reflect the "routine operating decisions" made by agency staff members charged with producing fact sheets

---

[8] Notwithstanding defendants' reliance on Exemption 5 in their *Vaughn* index and motion papers, it does not appear that *any* of the redactions to the June 6, 2017 email were made on that basis. Each redaction includes overlay text indicating that it was made pursuant to "(b)(6)" and/or "(b)(7)(C)," not (b)(5). Bannan Decl. Ex. W at ECF page 4. The cited exemptions protect against "unwarranted invasion[s] of personal privacy." 5 U.S.C. §§ 552 (b)(6), (b)(7)(C).

or updating the agency website. *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 356. Nor have defendants demonstrated that the withheld document or redacted content predated and "related to a specific decision facing the agency." *Nat'l Day Laborer*, 811 F. Supp. 2d at 735.

For these reasons, and on the current record, defendants have not met their burden of establishing that the documents described in the sixth category were properly withheld pursuant to Exemption 5. Defendants' motion will be denied as to this category, without prejudice to renewal after the service of supplemental *Vaughn* materials. In addition, if defendants made a ministerial error in marking the redactions to the June 6, 2017 email (or any other redacted documents) as based on "(b)(6)" and/or "(b)(7)(C)" instead of "(b)(5)," they must correct that error.

### 7.    VOICE Quarterly Report

The seventh category is referred to in defendants' brief as the "VOICE Quarterly Report," Def. Mem. at 15, but is described in their *Vaughn* index as a single email chain between ICE employees, bearing Bates numbers 347-355, "regarding the internal approvals necessary in order to release the quarterly report for the VOICE Office." Index at 8; *see also* Bannan Decl. Ex. M. Rather than containing "facts or details contained within the quarterly report," the email chain "discusses whether certain approvals are needed prior to publication of the quarterly report." *Id.*

Unlike the documents described above, the email chain was produced with only certain portions redacted, including some, but not all, of the text of the emails in the chain. The chain begins on May 7, 2019, at 12:12 p.m., when an Assistant Director of ICE asked an unknown individual (whose name is redacted) to "upload this [presumably a quarterly report] for clearance" by "HSI VAP, Privacy, OPLA and the FO." Bannan Decl. Ex. M at ECF page 10. Weeks later, on May 31, 2019 – after the report was cleared by various ICE directorates or divisions, including OPLA and the FO – an ICE Senior Staff Officer informed the Assistant Director that he or she was

"about to submit to DHS for Component clearance." *Id*. at ECF page 6. The Assistant Director responded, "I don't think we need DHS clearance as this has been cleared by them before." *Id*. at ECF page 5. Later that afternoon (after several redacted exchanges, some of which appear to have been redacted only for personal privacy pursuant to "(b)(6)" and/or "(b)(7)(C)") the Assistant Director sent an email to "ICE Exec Sec" stating, "We only cleared the first report with DHS. This would be the third so I recommend [redacted pursuant to '(b)(5)']. Thank you." Bannan Decl. Ex. M at ECF page 4. It appears that the Assistant Director's recommendation was not carried out: at 4:50 p.m. that day, she was told that "Exec Sec will follow through with DHS clearances, as ICE cannot submit anything to the White House without following the proper chain of command." *Id*.

According to defendants, the redacted portions constitute "[d]eliberative and predecisional correspondence regarding internal approvals necessary in order to release the quarterly report for the VOICE Office." Index at 8. However, nothing in defendants' *Vaughn* materials, or in their brief, suggests that the communications here at issue actually "bear on the formulation or exercise of policy-oriented judgment." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 356. As defendants acknowledge (and as the email chain makes clear, even in redacted form), the topic of the withheld communications was not the quarterly report itself; nor were any of the ICE personnel on the chain developing agency policy concerning those quarterly reports. They were simply attempting to ascertain what they were required to do under *existing* clearance policies, set at higher levels within the Executive Branch (DHS and the White House), in order to get the quarterly report "out the door." Bannan Decl. Ex. M at ECF page 8. Making such a determination is part of an agency official's "routine operating decisions," *see Nat'l Council of La Raza*, 411 F.3d at 356,

which do not qualify for protection under the deliberative process privilege.[9] Consequently, defendants must re-produce the email chain bearing Bates numbers 347-355 with Exemption 5 redactions removed.

### 8. Organizational Chart

The eighth category – labeled "Organizational Chart" by defendants – includes a one-page, draft organizational chart for the ICE Office of Partnership and Engagement, as well as a July 18, 2017 email from an ICE Deputy Assistant Director regarding the drafting of the organizational chart, bearing Bates numbers 288 and 734, respectively. Def. Mem. at 16; *see also* Index at 7, 12; Bannan Decl. Exs. K, W. The organizational chart, which is withheld in its entirety, "contains information on the potential structure and function of the Office of Partnership and Engagement." Index at 7. According to defendants, the corresponding email (subject line: "VOICE . . . I'm baaaaack") shows ICE employees evaluating options as to "how the agency plans to implement the VOICE office and reflect[s] a back and forth discussion on how to implement agency policy." Index at 12. In their brief (although not in their *Vaughn* materials), defendants provide additional detail, stating that both documents "reflect communications relating to the best way to place the VOICE Office within ICE's overall structure, including relationships among various offices and chains of command." Def. Mem. at 16.[10]

---

[9] In their brief, defendants argue that even if the email chain itself does not represent a deliberative and predecisional discussion, producing the chain unredacted would "provide insight into the agency's deliberative process – specifically the process the agency goes through in order to make a given decision." Def. Mem. at 15. However, the deliberative process privilege does not protect any and every document that might "provide insight" into how an agency goes about making decisions. Rather, it protects documents which are themselves predecisional and deliberative. *Tigue*, 312 F.3d at 76-77.

[10] Defendants' brief also informs the Court that in the email the author, a Deputy Assistant Director of ICE, states "that he is 'being asked to provide an updated suggested org chart.'" Def. Mem. at 16 n.9. If so, defendants have, at a minimum, over-redacted the email. The quoted sentence does not appear in the email as produced. *See* Bannan Decl. Ex. W at ECF page 5.

Here, as with the seventh category, defendants have failed to demonstrate that either document "bear[s] on the formulation or exercise of policy-oriented judgment." *See Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 358. At best, an organizational chart which "contains information on the potential structure and function of the Office of Partnership and Engagement" is "peripheral to actual policy formation," *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 356; the Court fails to see how it amounts to policy-making. *See Coleman v. Schwarzenegger*, 2008 WL 4234239, at *5 (N.D. Cal. Aug. 29, 2008) (holding that government defendants failed to meet their burden of showing that the deliberative process privilege applied to "an organizational chart," even though it was "marked as a draft"). Similarly, even assuming that the Deputy Assistant Director who sent the email was "being asked to provide an updated suggested org chart," the task at hand is better characterized as agency housekeeping, not agency policymaking. There is also no indication that either the chart or the email is "deliberative," in the sense that neither document is "related to the process by which policies are formulated." *See Nat'l Council of La Raza*, 411 F.3d at 356. Therefore, defendants must produce the draft organizational chart at Bates number 288 and re-produce the email chain at Bates number 734 with Exemption 5 redactions removed.[11]

### 9. Detention Space Rollout Plan

The ninth and final category includes two documents relating to ICE's "Detention Space Rollout Plan," bearing Bates numbers 252-259 and 260-263. Def. Mem. at 16; *see also* Index at 5-6; Bannan Decl. Ex. I. The first document – withheld in its entirety – is described as a memorandum called "U.S. Immigration and Customs Enforcement Detention Space Rollout Plan,"

---

[11] As with the sixth category, the overlay text for the redactions on the July 18, 2017 email invoke Exemptions 6 and 7(C), rather than Exemption 5. Bannan Decl. Ex. W at ECF page 5. This too appears to have been a ministerial error. When defendants re-produce the email, they must remove all redactions actually made pursuant to Exemption 5, whether or not mismarked on the document. They need not remove redactions actually made pursuant to other exemptions.

which "describes plans and strategies for meeting increased detention space needs." Index at 5. More specifically, this memorandum "contains estimates of bed space needs and expected policy changes," considers "the different obstacles and challenges to increasing detention space including funding, staffing, medical professionals, transportation, contractual limitations, and construction," and describes "ICE's efforts to support [U.S. Customs and Border Protection] detention space capabilities" and discusses "proposed models for detention oversight." *Id.* "The final portions provide draft beds [sic] space projected needs and a list of facilities that are planned for activation." *Id.* The purpose of the memorandum was to "evaluate options in response to specific items raised in the Executive Order Task Force Meeting." *Id.* According to defendants, the document "reflect[s] a back and forth discussion on how the agency is to implement its policies," and contains "draft watermarks indicating it is a draft document." *Id.*

The second document – from which all content other than the title and the ICE logo has been redacted – is a memorandum entitled "U.S. Immigration and Customs Enforcement (ICE) Detention Space Projected Needs." Index at 6. This document also "describes estimated detention space needs" and "contains estimates of bedspace needs and expected policy changes." *Id.* In the *Vaughn* index, it is described nearly identically to the first memorandum, except that it does *not* contain any draft watermarks. *Id.* In their brief, defendants argue that it is "nonetheless a deliberative document [because it] discuss[es] strategies for meeting increased detention needs, thus warranting its withholding as a deliberative document." Def. Mem. at 16 n.10.

No date or date range is provided for either memorandum, or for the Executive Order Task Force Meeting out of which they apparently arose. Defendants have withheld both documents in full under Exemption 5, pursuant to the deliberative process privilege, making no claim of attorney-client privilege.

The Court agrees that both documents are predecisional, as they were prepared to assist ICE in making decisions about how to "meet[] increased detention space needs." Moreover, the descriptions provided establish that the author(s) "prepared the document for the purpose of assisting the agency official charged with making the agency decision" as the stated purpose of the documents was to "evaluate options in response to specific items raised in the Executive Order Task Force Meeting." *See id.* It is also evident that the documents "precede[ ], in temporal sequence, the decision[s] to which [they] relate[ ]," which in this case, was ICE's decisions regarding how to meet its increased detention space needs. *See id.*

The Court further agrees that both memoranda are deliberative, in that they are "related to the process by which policies are formulated," *see Nat'l Council of La Raza*, 411 F.3d at 356, and not merely part of the agency's "routine operating decisions." *Adelante Alabama Worker Ctr.*, 376 F. Supp. 3d at 356. However, the *Vaughn* materials do not rule out or even address the possibility that (particularly as to the non-draft memorandum) it has been "adopted, formally or informally, as the agency position on an issue," is "used by the agency in its dealings with the public," or "embod[ies] the agency's effective law and policy." *Id.* Defendants' motion will be denied as to the documents in category nine, therefore, without prejudice to renewal after the service of supplemental *Vaughn* materials.

## III.    CONCLUSION

For the reasons set forth above, plaintiffs' motion (Dkt. No. 47) is GRANTED IN PART, and defendants' motion (Dkt. No. 41) is DENIED IN PART, to the extent that defendants must promptly produce, without Exemption 5 redactions, the documents bearing Bates numbers 288, 347-355, and 734. In all other respects, both parties' motions are DENIED without prejudice to renewal in accordance with this Opinion and Order. *See Seife*, 298 F. Supp. 3d at 630-31; *Cox*,

2020 WL 7024288, at *28. As to the documents bearing Bates numbers 1-7, 90-99, 106-112, 155-157, 170-179, 183-192, 195-197, 201-216, 252-263, 264-268, 319-324, 386-390, 405-416, 455-467, 511-523, 528-540, 582-595, 599-608, 643-654, 679-690, 731-733, and 800-809, defendants shall submit supplemental *Vaughn* materials no later than **May 21, 2021**. The supplemental materials shall provide sufficient detail for the Court to determine whether the documents they wish to withhold or redact are in fact protected from disclosure pursuant to FOIA Exemption 5.

Promptly after the submission of the supplemental *Vaughn* materials, the parties shall meet and confer in good faith to resolve their remaining disputes. To the extent they are unable to do so, they may renew their cross-motions for summary judgment, simultaneously, no later than **June 11, 2021**. Beyond their respective notices of motion, each party shall be limited to a 10-page memorandum identifying the documents that remain in dispute and addressing whether, as to those documents, defendants have met their burden of establishing the applicability of Exemption 5. Opposition briefs, similarly limited, shall be filed on or before **June 25, 2021**, unless the parties stipulate to a different schedule.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 41 and 47.

Dated: New York, New York
April 29, 2021

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**